### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GLENDA ERAZO,                                    :
                                                 :
                    Plaintiff,                   :
                                                 :     CIVIL ACTION
          v.                                     :
                                                 :
MARTIN O'MALLEY,[1]                              :     No. 22-cv-0820-RAL
Commissioner of Social Security                  :
                                                 :
                    Defendant                    :
                                                 :

**RICHARD A. LLORET**                          **April 18, 2024**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM OPINION

The Commissioner of Social Security, through the decision of an Administrative Law Judge ("ALJ"), denied Plaintiff Glenda Erazo's application for Social Security Disability Insurance Benefits. The ALJ determined that Ms. Erazo was capable of a limited range of sedentary work and so was not disabled under the definition of the Social Security Act. R. 28.[2] After careful review, I find that the ALJ's decision is supported by substantial evidence and affirm.

### PROCEDURAL HISTORY

Ms. Erazo filed a claim for Disability Insurance Benefits on June 1, 2017. R. 124. She alleges a disability onset date of May 5, 2017, citing stage 1 thyroid cancer, back pain and herniated disc, left leg nerve damage, and anxiety. R. 124. Ms. Erazo's application

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley should be substituted for Kilolo Kijakazi as Defendant. No further action need be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] All references to the administrative record will be listed as "R. ____". The administrative record is document number nine on ECF.

was denied on May 23, 2019. R. 172–177. Ms. Erazo requested a hearing before an ALJ, which was held on May 23, 2019. R. 82–121. Ms. Erazo testified at the hearing through a Spanish language interpreter. *See id.* A vocational expert also testified. *Id.* Following the hearing, the ALJ found that Ms. Erazo was not disabled under the Social Security Act during the relevant period. R. 162. On June 23, 2020, the Appeals Council granted Ms. Erazo's request for review, finding that (1) the ALJ's RFC assessment did not credit the opinion of the consultive examiner that Ms. Erazo needed a cane for ambulation and balance, and (2) because the ALJ determined that the Plaintiff had no ability to "balance," but did not explain whether this was only on narrow, slippery, or erratically moving surfaces or "also while standing or walking on level terrain." R. 165. A second hearing was held on October 8, 2020 at which Ms. Erazo, through an interpreter, and a vocational expert again testified. R. 47–81. On October 23, 2020, following the hearing, the same ALJ issued a second unfavorable decision. R. 16–46. On January 6, 2022, the Appeals Council denied Ms. Erazo's second request for review, making the ALJ's determination a final determination. R. 1–6. Ms. Erazo then filed an appeal in this Court. Doc. No. 1. [3]

## FACTUAL BACKGROUND

### A.    The Claimant's Background

Ms. Erazo was was forty-one years old on her alleged disability onset date, making her a "younger person" under the regulations. R. 36; *see* 20 C.F.R. §§ 404.1563. Ms.Ferarro has a Bachelor's degree in early childhood education and has past relevant work as a teacher aide (DOT 249.367-074) and a nursery school attendant

---

[3] Unless otherwise indicated, all references to the electronically docketed record will be cited as "Doc. No. ____ at ____."

(DOT 359.677-018). R. 35–36. Ms. Erazo underwent back surgery in October 2015. R. 750. Following her surgery, Ms. Erazo was able to return to work as a teacher's aide until June 2017. R. 92, 453.

### B.    The ALJ's Decision

The ALJ determined that Ms. Erazo was not disabled under the Social Security Act during the relevant period. R. 37. In reaching this decision, the ALJ made the following findings of fact and conclusions of law pursuant to Social Security's five-step sequential evaluation process.[4]

Prior to step one, the ALJ determined that Ms. Erazo met the insured status requirements of the the Social Security Act .[5] R. 24. At step one, the ALJ confirmed that Ms. Erazo had not engaged in substantial gainful activity since her alleged disability onset date, June 8, 2017. R. 24.

At step two, the ALJ determined that Ms. Erazo had six severe impairments: obesity, degenerative disc disease, fibromyalgia, right knee osteoarthritis, anxiety, and depression. R. 24–25. At step three, the ALJ compared Ms. Erazo's impairments to

---

[4] An ALJ evaluates each case using a sequential process until a finding of "disabled" or "not disabled" is reached. The sequence requires an ALJ to assess whether the claimant: (1) is engaging in substantial gainful activity; (2) has a severe "medically determinable" physical or mental impairment or combination of impairments; (3) has an impairment or combination of impairments that meet or equal the criteria listed in the social security regulations and mandate a finding of disability; (4) has the residual functional capacity to perform the requirements of his past relevant work, if any; and (5) is able to perform any other work in the national economy, taking into consideration his residual functional capacity, age, education, and work experience. See 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

[5] When an applicant is seeking disability insurance benefits, the ALJ must determine the applicant's insured status. 20 C.F.R. § 404.101(a). If an applicant is "neither fully nor currently insured, no benefits are payable based on [the applicant's] earnings." *Id*. The applicant is able to recover DIB only through their last insured date. 42 U.S.C. § 423(a).

those contained in the Social Security Listing of Impairments[6] and found that Ms. Erazo's impairments, either individually or jointly, did not meet or medically equate to the severity of one of the listed impairments. R. 25–28.

Prior to reviewing step four, the ALJ determined that Ms. Erazo had the residual functional capacity ("RFC") to perform sedentary work with some limitations.[7] R. 28–35. The ALJ found that Ms. Erazo could frequently reach with both arms but could only occasionally operate bilateral hand and foot controls; push/pull with the bilateral upper and lower extremities; climb ramps and stairs, stoop, kneel, and crawl; or be exposed to work involving unprotected heights, moving mechanical parts, operating a motor vehicle, humidity, wetness, extreme cold, extreme heat, and vibration. R. 28. The ALJ further determined that Ms. Erazo could never climb ladders, ropes, or scaffolds or crouch or balance on narrow, slippery, or erratically moving surfaces but can continuously balance on level surfaces with a cane which is required to ambulate and can perform, use judgment, and tolerate occasional changes in a routine work setting defined as that consistent with routine and repetitive tasks. R. 28.

At step four, the ALJ determined that Ms. Erazo is unable to perform her past relevant work as a teacher's aide or nursey school attendant, in light of the Vocational Expert's testimony that an individual with Ms. Erazo's RFC could not perform her past

---

[6] The regulations contain a series of "Listings" that describe symptomology related to various impairments. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1. If a claimant's documented symptoms meet or equal one of the impairments, "the claimant is conclusively presumed to be disabled." *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). If not, the sequential evaluation continues to step four, where the ALJ determines whether the impairments assessed at step two preclude the claimant from performing any relevant work the claimant may have performed in the past. *Id*.

[7] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567.

work. R. 35–36. The ALJ then noted that Ms. Erazo was forty-one years old on the alleged disability onset date, making her a "younger person"[8] under the guidelines. R. 36. The ALJ acknowledged Ms. Erazo had at least a high school education and that transferability of job skills was not material to the determination of disability because "using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferrable job skills." R. 36 (citing SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

At step five, the ALJ determined that, considering her age, education, work experience, and RFC there are jobs that exist in significant numbers in the national economy that Ms. Erazo can perform including the jobs of a Toy Stuffer (DOT 731.685-014), a Cuff Folder (DOT 685.687-014), or a Compact Assembler (DOT 739.687-066). R. 36–37.

The ALJ therefore concluded that Ms. Erazo was not disabled during the relevant period. R. 37.

## STANDARD OF REVIEW

My review of the ALJ's decision is deferential. I am bound by his findings of fact to the extent those findings are supported by substantial evidence in the record. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citing *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). Accordingly, my review of the ALJ's findings of fact is limited to determining if substantial evidence supports the decision. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)). If the ALJ's factual conclusion is supported by substantial evidence, his disability determination must be

---

[8] 20 C.F.R. 404.1563.

upheld. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *see also* 42 U.S.C. § 405(g); *Dickinson v. Zurko*, 527 U.S. 150, 164 (1999).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence "is more than a mere scintilla but may be less than a preponderance." *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). I must rely on the record developed during the administrative proceedings along with the pleadings in making my determination. *See* 42 U.S.C. § 405(g). I may not weigh the evidence or substitute my own conclusions for those of the ALJ. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). I must also defer to the ALJ's evaluation of evidence, assessment of the witnesses, and reconciliation of conflicting expert opinions. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 506 (3d Cir. 2009).

The ALJ's legal conclusions and application of legal principles are subject to plenary review. *See Krysztoforski v. Chater*, 55 F.3d 857, 858 (3d Cir. 1995). I must determine whether the ALJ applied the proper legal standards in reaching the decision. *See Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir. 1984). Accordingly, I can overturn an ALJ's decision based on an incorrect application of a legal standard even where I find that the decision otherwise is supported by substantial evidence. *Payton v. Barnhart*, 416 F. Supp. 2d 385, 387 (E.D. Pa. 2006) (Katz, J.) (citing *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983)).

An ALJ must provide sufficient detail in his opinion to permit meaningful judicial review. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119–20 (3d Cir. 2000). An ALJ must also address all pertinent evidence in the record. *See id.* at 121–22. When

dealing with conflicting medical evidence, the ALJ must describe the evidence and explain his resolution of the conflict. *Id.* at 121. As the Third Circuit observed in *Plummer v. Apfel,* 186 F.3d 422, 429 (3d Cir. 1999):

> When a conflict in the evidence exists, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Mason v. Shalala,* 994 F.2d 1058, 1066 (3d Cir. 1993). The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects. *See Stewart v. Secretary of H.E.W.*, 714 F.2d 287, 290 (3d Cir. 1983).

> An ALJ's decision is to be "read as a whole." *See Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). The question on review is whether, reading the ALJ's opinion as a whole against the record, the reviewing court can understand why the ALJ reached his decision and can identify substantial evidence in the record supporting that decision. *Caruso v. Commr. of Soc. Sec.*, 99 Fed. App'x. 376, 379 (3d Cir. 2004)).

## DISCUSSION

Ms. Erazo, through counsel, presents five issues for my review. She first alleges that the ALJ did not properly evaluate her headaches and carpal tunnel syndrome at step two. Doc. No. 12 at 18–20 ("Pl. Br."). Ms. Erazo next alleges that the ALJ erred by evaluating her headaches under an incorrect listing. *Id.* at 20–22. She then asserts that neither the ALJ's RFC assessment nor his evaluation of the persuasiveness of the medical opinion evidence are supported by substantial evidence. *Id.* at 22–29. Finally, she argues that the ALJ's hypothetical questions to the Vocational Expert were deficient and so do not constitute substantial evidence that there are a significant number of jobs available for a person similar to Ms. Erazo. *Id.* at 29–30. The Commmissioner responds that the final decision is supported by substantial evidence and should be affirmed. Doc. No. 15 at 2 ("Comm. Br."). For the reasons discussed below, I find that the ALJ's

decision accounts for all evidence of record and is soundly reasoned, and free from legal error. I affirm.

### A.      The ALJ properly considered each of Ms. Erazo's medically determinable impairments at step two.

Ms. Erazo first challenges the ALJ's step-two analysis. *See* Pl. Br. at 18–20. She alleges that the ALJ incorrectly determined that he headaches and carpal tunnel syndrome were not severe impairments. *Id*. She contends that the ALJ erred in his determination of the severity of her headaches by not giving weight to certain objective medical evidence from her treating neurologist. Pl. Br. at 20. She further contends that his determination that Ms. Erazo's carpal tunnel syndrome would resolve itself within twelve months was improper lay opinion. *Id*. The Commissioner argues that the ALJ's step two analysis should not be disturbed because the ALJ's conclusion was supported by substantial evidence and any error in the ALJ's analysis was harmless. Comm. Br. at 11. After reviewing the ALJ's opinion and the administrative record, I agree with the Commissioner and find no error.

At step two, the ALJ is required to consider whether the claimant suffers from a medically determinable impairment (or combination of impairments) that is "severe" and lasts for the durational period. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). To be severe, the impairment must significantly limit the claimant's ability to perform "basic work activities." *See* 20 C.F.R. § 404.1520(a), (c); *id*. § 416.920(a), (c); *see also* 20 C.F.R. §§ 404.1522, 416.922. To meet the durational requirement, the severe impairment "must have lasted or must be expected to last for a continuous period of at least 12 months." *See* 20 C.F.R. §§ 404.1509, 416.909.

The claimant has the burden of establishing a severe impairment, at step two, but that burden "is not an exacting one." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). The claimant must only "demonstrate something beyond a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." *Id.* (internal quotation marks omitted) (quoting SSR 85–28, 1985 WL 56856, at *3 (Jan. 1, 1985)). Like every step in the sequential analysis, the Commissioner's severity determination at step two will be upheld if it is supported by substantial evidence of the record as a whole. *McCrea,* 370 F.3d at 360–61.

Here, the ALJ found that Ms. Erazo has six severe impairments: obesity, cervical and lumbar degenerative disc disease, fibromyalgia, right knee osteoarthritis, anxiety, and depression. R. 24. The ALJ then provided sufficient reasoning for his determination that Ms. Erazo's other medically determinable impairments, including her headaches and carpal tunnel syndrome, have only a minimal impact on her ability to perform basic work activities. R. 25.

For example, in evaluating Ms. Erazo's carpal tunnel syndrome, the ALJ explained:

> The claimant reported intermittent numbness and tingling in her hands in June 2017 (Exhibit 34F). The claimant's November 2017 upper extremity EMG found mild carpal tunnel syndrome (Exhibit 45F). There was with no additional treatment or complaints until August 2020 (Exhibit 46F). The claimant [had] intact hand and finger dexterity . . ., full grip strength bilaterally, and was able to zip, button, and tie with either hand in February 2019 (Exhibit 21F). The claimant reported worsening hand impairments, exhibited positive Tinel's signs at her bilateral wrists, and was prescribed wrist splints in August 2020 (Exhibit 45F, 46F). Despite the recent worsening in reported symptoms, [t]here is no indication that this would not resolve within a 12-month period.

R. 25. This finding is based on substantial evidence, including a review and discussion of Ms. Erazo's medical records. Ms. Erazo suggests that the ALJ improperly inserted his own opinion in lieu of the medical evidence when he noted that there was nothing in the record to indicate her carpal tunnel would not resolve within twelve months. Pl. Br. at 20.  I disagree that the ALJ is relying on his own opinion here. "[D]iagnoses alone are insufficient" to establish an impairment's severity at step two. *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 (3d Cir. 2007). A claimant must also present evidence that the impairment "significantly limited her ability to do basic work activities," *see id.* (emphasis in original), and that it lasted (or was expected to last) for at least a year, *see* 20 C.F.R. §§ 404.1509, 416.909. In resolving this issue, the ALJ found that "the evidence of record does not establish that any of these impairments have caused work-related functional limitations for a period of twelve continuous months or have more than a minimal effect on the claimant's ability to perform basic work activities." R. 25. That Ms. Erazo did not present sufficient evidence regarding the duration of her carpal tunnel syndrome does not suggest error by the ALJ.

Regarding Ms. Erazo's headaches, the ALJ noted that:

The claimant reported headaches since her teenage years that worsened in frequency and duration in 2017 (R. 1608–1676). The claimant was started on preventative migraine medication in January 2018. In August 2019, the claimant reported a decrease in frequency of headaches due to medication, and by February 2020, the claimant reported that she was having headaches 2 to 3 days per month normally taking 1 hour to abort with medication (R. 2627–2644). Her neurologist found the claimant's headache was well controlled.

R. 25. Ms. Erazo asserts that this evaluation is an error because it fails to specifically mention certain medical records from March 2018, April 2018, July 2018, and January 2019 which, she asserts, support that her headaches are more severe than the ALJ's

determination. Pl. Br. at 20. "As at other steps, at step two an ALJ's decision is supported by substantial evidence when the ALJ has considered all of the evidence before [him] and explained why [he] rejected any relevant evidence that was in conflict with [his] ultimate decision." *McClease v. Comm'r of Soc. Sec.*, No. 08-1673, 2009 WL 3497775, at *8 (E.D. Pa. Oct. 28, 2009) (citing *Cotter v. Harris*, 642 F.2d 700, 704, 707 (3d Cir. 1981), and Newell, 347 F.3d at 547–48). Evidence is not substantial "if it is overwhelmed by other evidence." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). Contrary to Ms. Erazo's suggestion, the ALJ did review records from her treating neurologist. He merely reached a different result. In reaching his conclusion, the ALJ acknowledged Ms. Erazo's history of problems, but noted that, by February 2020, she reported having only 2 to 3 headache days per month which responded to medication. R. 25 (citing Exhibit 46F). The ALJ's cited records (which includes entries that post-date the records Ms. Erazo asserts the ALJ overlooked) support his determination that Ms. Erazo's headaches are not a severe impairment.

I am satisfied that the ALJ properly considered the evidence before him when evaluating the severity of Ms. Erazo's symptoms, and I find that his conclusions at this step are supported by substantial evidence.

### B.   The ALJ did not err in his treatment of Ms. Erazo's headaches at step three.

Ms. Erazo next argues that the ALJ erred at step three by failing to evaluate whether her headaches met the requirements of Listing 11.02 or the definition of a "Primary Headache Disorder" under SSR 19-4. R. 20–21. "At step three, an ALJ is charged with determining whether a claimant's impairment or combination of impairments meets, or medically equals, the criteria of an impairment listed in

20 C.F.R. §§ 404.1520(d) and 416.920(d)." *Diaz,* 577 F.3d at 502. Listing 11.02 relates to epilepsy (*see* 20 C.F.R. § Pt. 404, Subpt. P, App. 1) and SSR 19-4p provides guidance indicating that the epilepsy Listing is the most closely analogous to a primary headache disorder. *See* SSR 19-4.

Although it is true that the ALJ failed to mention either listing in the step-three analysis, Ms. Erazo has not met her burden of demonstrating why the ALJ's analysis contstituted harmful error. "Ordinary harmless error review . . . is applicable to administrative appeals." *Holloman v. Comm'r Soc. Sec.*, 639 F. App'x. 810, 814 (3d Cir. 2016) (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *See Shinseki*, 556 U.S. at 409. To show harmfulness, Ms. Erazo must explain how she "might have prevailed at step three if the ALJ's analysis had been more thorough." *Holloman*, 639 F. App'x at 814. In doing so, she must "affirmatively point[] to specific evidence that demonstrates [she] should succeed at step three." *Woodson v. Comm'r Soc. Sec.*, 661 F. App'x 762, 766 (3d Cir. 2016).

Ms. Erazo does not do so here. She merely asserts that she "suffers from disabling headaches that equal the requirements of Listing 11.02 and meet[s] the criteria for a 'Primary Headache Disorder' under SSR 19-4p" and summarizes record evidence related to her headaches. R. 20–21. Ms. Erazo does not explain how further analysis under Listing 11.02 would change the outcome of her claim. Indeed, she does not even identify the criteria required to satisfy that Listing. Rather than show how the severity of her own headaches meets the requirements of Listing 11.02, Ms. Erazo identifies a portion of SSR 19-4 indicating that "headaches [which] last anywhere from 4 to 72 hours and occur at least 2 times or more weekly" are "most closely analogous" to Listing 11.02.

R. 21. On that same page, Ms. Erazo notes that she only "averages 2 to 5 headache days per month." *Id.* Ms. Erazo has not explained how her headaches, which are less frequent than 2 times or more weekly, individually or in combination with her other impairments, meet the requirements of Listing 11.02. Thus, even if the ALJ erred at step three, remand is not appropriate because Ms. Erazo has not shown that the error was harmful. *Woodson*, 661 F. App'x at 766.2

### C.     The ALJ properly considered the medical source opinions in the record.

Ms. Erazo further alleges that the ALJ erred by rejecting a medical source opinion[9] from her family doctor James Wertz, DO "without citing to any contrary evidence." Pl. Br. at 26–29. The Commissioner responds that any error in the ALJ's treatment of Dr. Wertz' opinion is harmless because, "even if Plaintiff's characterization of the opinion evidence was true, and adopted by the ALJ, it would not change the outcome of the case." Comm. Br. at 22.

Between April 2017 and April 2019, Ms. Erazo's family doctor provided five medical source opinions indicating his assessment of Ms. Erazo's workplace limitations. *See* R. 1381–1388 (dated August 28, 2017), 1391–1394 (dated December 7, 2017), 1419–1422 (dated April 8, 2017), 1423–1424 (dated April 16, 2017), 1767–1776 (dated April 16, 2017), 1558–1562 (dated April 27, 2019). Each of the opinions consisted of form questionnaires that required Dr. Wertz to check boxes indicating the level of restriction Ms. Erazo would require to perform certain work-related activities. The ALJ

---

[9] Ms. Erazo also presented opinions from her mental health providers Lauden Dennelly, LSCW and Karen Brooks-Wells, M.A., which the ALJ similarly found to be unpersuasive. While Ms. Erazo identifies both of these opinions in her brief to this court, she does not actually argue that the ALJ's treatment of these opinions was erroneous. I do not find any reason to disturb the ALJ's related findings.

acknowledged that while "[t]here are internal differences between the various opinions," Dr. Wertz essentially found that:

> amongst other limitations, the claimant would have the debilitating restrictions of not having the stamina to work an easy job for 8 hours or be unable to sit/walk/stand for a combination of 8 hours, would be "off task" 25% of the day, would need unscheduled breaks, and would be absent 4 days per month.

R. 34.

A medical source opinion is "a statement from a medical source about what [the claimant] can still do despite [her] impairment(s) and whether [she] [has] one or more impairment-related limitations or restrictions[.]" 20 C.F.R. § 404.1513(a)(2). Ms. Erazo applied for benefits after March 17, 2017, thus the relevant regulations provide that, when evaluating medical source opinions, the ALJ must articulate how he considered the medical opinion including "how persuasive [he] find[s] a medical source's medical opinions" to be. 20 C.F.R. § 416.920c(b). In doing so, the ALJ should consider the following factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors. 20 C.F.R. § 416.920c(c). "While the ALJ is, of course, not bound to accept physicians' conclusions, [she] may not reject them unless [she] first weighs them against other relevant evidence and explains why certain evidence has been accepted and why other evidence has been rejected." *Cadillac v. Barnhart*, 84 F. App'x 163, 168 (3d Cir. 2003) (quoting *Kent*, 710 F.2d at 115 n.5) (internal quotation omitted).

The ALJ considered Dr. Wertz's opinions and found that their conclusions were not supported by the medical records, including Dr. Wertz's own treatment records. In dismissing these opinions, the ALJ explained that Dr. Wertz's findings "are not supported by findings from this provider nor the record as a whole." R. 34. He first

noted that "[s]ome opinions predate the claimant's alleged onset date, while the claimant was still earning substantial gainful activity[.]" R. 34. He went on to explain that Dr. Wertz's opinions regarding Ms. Erazo's ability to work contradict his own contemporaneous treatment records and "suffer from internal inconsistencies." R. 34 (citing R. 2545–2626). For example, in certain opinions, Dr. Wertz found that Ms. Erazo "could occasionally climb ladders, ropes, and/or scaffolds but never climb stairs" but noted in others that "the claimant could occasionally climb stairs but never climb ladders." R. 34–35. Likewise, in one statement Dr. Wertz "opined the claimant could stand and/or walk less than 2 hours while simultaneously opining the claimant would need to walk for 5 minutes every 5 minutes" but, in another opinion, found that she "would need to walk 5 minutes every 30 minutes." R. 35. The ALJ determined that "none of these limitations were based on specific cited physical examination findings, or changes in her physical examination that would correlate to changes in functioning." R. 35.

The ALJ addressed Dr. Wertz's assessment and sufficiently explained his reasons for finding it unpersuasive. He explicitly determined that Dr. Wertz's conclusions regarding Ms. Erazo's functional limitations were internally inconsistent and contradicted the record. In doing so, he pointed to specific contrary facts. My review of the ALJ's findings of fact is limited to determining if substantial evidence supports the decision. *Hartranaft*, 181 F. 3d at 360 (citing 42 U.S.C. § 405(g)). Because the ALJ reached a reasonable conclusion under the appropriate regulatory scheme and properly explained why she found Ms. Lobbenberg's opinion to be unpersuasive, I find no error here.

**D.    Substantial evidence supports the ALJ's finding that Ms. Erazo was not disabled.**

Having determined that the ALJ appropriately evaluated each of Ms. Erazo's medically determinable impairments and placed an appropriate weight on the opinions of Dr. Wertz, I find that the ALJ's opinion is supported by substantial evidence.

At step two, the ALJ determined that Ms. Erazo had six severe impairments: obesity, cervical and lumbar degenerative disc disease, fibromyalgia, right knee osteoarthritis, anxiety, and depression. R. 24. A severe impairment occurs when there is an "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Basic work activities include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;" "[u]nderstanding, carrying out, and remembering simple instructions;" "[u]se of judgment;" "[r]esponding appropriately to supervision, co-workers and usual work situations;" and "[d]ealing with changes in a routine work setting." 20 C.F.R. § 416.922(b). After reviewing the full record, the ALJ determined that each of "the above medically determinable impairments significantly limit the ability to perform basic work activities[.]" R. 25.

The ALJ went on to explain that the evidence of record establishes additional non-severe medically determinable impairments. The ALJ found Ms. Erazo's documented hyperlipidemia, speel apnea, non-alcoholic liver disease, GERD, vitamin D deficiency, and cholelithiasis were non-severe where "the claimant has not sought, required or received ongoing intensive or extensive treatment for any symptomatology associated with these impairments." R. 25. The ALJ further determined that Ms. Erazo's

hyperthyroidism—which resulted from a successful thyroidectomy necessitated by a thyroid cancer diagnosis—was not a severe impairment where she "requires a daily dose of synthetic thyroid horemone but no other treatment." R. 25. As discussed above, the ALJ acknowledged that Ms. Erazo reported suffering from regular headaches since she was a teenager. R. 25. The ALJ determined that Ms. Erazo's headaches were not severe where "[h]er neurologist found that the claimant's headache was well controlled" and by, February 2020, Ms. Erazo had only 2 to 3 headache days per month which normally resolved within 1 hour with medication. R. 25. Futher, as discussed, the ALJ found that Ms. Erazo was diagnosed with mild carpal tunnel syndrome and experienced numbness and tingling in her hands beginning in June 2017, but that her symptoms were not severe. R. 25.

In reaching his conclusion at step two, the ALJ explained that "the evidence of record does not established that any of these impairments have caused work-related functional limitations for a period of twelve continuous months or have more than a minimal effect on the clamant's ability to perform basic work activities." R. 25. The ALJ considered the record evidence and explained his reasoning. His step two conclusions are suppored by substantial evidence.

At step three, the ALJ determined that Ms. Erazo's impairments did not meet or medically equal the criteria of Listing 1.02 (major dysfunction of a joint due to any cause); Listing 1.04 (disorders of the spine); Listing 14.09 (inflammatory arthritis); any listing under the guidance provided in SSR 12-2 (relating to fibromyalgia); Listing 12.04 (bipolar and related disorders); or Listing 12.06 (anxiety and obsessive-compulsive disorders) R. 25–28. The ALJ outlined the evidence needed to establish an impairment each of under these listings and considered whether Ms. Erazo's conditions satisfied

their criteria. *Id.* (citing 20 C.F.R. 404, Subpart P, App'x. 1). As discussed above, I find no error in his step three analysis. Even assuming the ALJ erred by neglecting to evaluate Ms. Erazo's heachaches under Listing 11.02, such error would be harmless.

Prior to step four, the ALJ determined Ms. Erazo's residual functional capacity, or "the most [Ms. Erazo] can still do despite [her] limitations." 20 C.F.R. § 416.945. After careful consideration of the entire record, the ALJ concluded that Ms. Erazo has the residual functional capacity to perform sedentary work, subject to certain postural and environmental limitations. R. 28–35. The ALJ found that Ms. Erazo could frequently reach with both arms but could only occasionally operate bilateral hand and foot controls; push/pull with the bilateral upper and lower extremities; climb ramps and stairs, stoop, kneel, and crawl; or be exposed to work involving unprotected heights, moving mechanical parts, operating a motor vehicle, humidity, wetness, extreme cold, extreme heat, and vibration. R. 28. The ALJ further determined that Ms. Erazo could never climb ladders, ropes, or scaffolds or crouch or balance on narrow, slippery, or erratically moving surfaces but can continuously balance on level surfaces with a cane which is required to ambulate and can perform, use judgment, and tolerate occasional changes in a routine work setting defined as that consistent with routine and repetitive tasks. R. 28. In making this determination, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" and "the medical opinion(s) and prior administrative medical findings" in accordance with the regulations. R. 28.

The ALJ spent seven pages reviewing the evidence in the record. *See* R. 28–35. Such evidence included Ms. Erazo's testimony and function report (R. 29 (citing R. 541–552)); physical therapy notes from 2015 (R. 30 (citing R. 591–619));

lumbar spine imaging dated between 2015 and 2017 (R. 30 (citing 739-747)); a 2017 EMG/nerve conductivity study and related examination records (R. 30 (citing R. 639, 799–816)); physical therapy, chiropractic and pain management records dated between 2016 and 2018 relating to Ms. Erazo's back pain (R. 30, 32 (citing R. 799–816, 1164–1185, 1546–1552, 1593–1607)); neurosurgery records dated between 2015 and 2017 (R. 30 (citing 748–798)); a 2017 cervical MRI (R. 30 (citing R. 1389–1390)); primary care records indicating that Ms. Erazo was prescribed a cane in 2017 (R. 30 (citing 1438–1545); physiatry and chiropractic examination records from 2018 and 2020 (R. 30, 31, 32 (citing R. 1819–1869, 2645–2661, 2320–2517, 2088–2319, 817-828)); neurology records from 2019 to 2020 (R. 30, 31 (citing R. 2627–2644)); primary care records from 2020 (R. 30, 31, 32 (citing R. 2545–2626)); several medical source statements from Ms. Erazo's primary care physician dated between 2017 and 2019 (R. 30, 34 (citing R. 1381–1388, 1391–1394, 1419–1422, 1423–1424, 1767–1776, 1558–1562)); orthopedic records from 2020 (R. 31 (citing R. 2534–2544)); treatment records dated between 2015 and 2017 indicating that Ms. Erazo's BMI places her in the obese category (R. 31 (citing R. 640–738, 910–1159, 1410–1418, 1389–1390, 1677–1816)); two state consultive examinations dated in by Ziba Monfared, MD and Gregory Coleman, PsyD (R. 31, 34 (citing R. 1395–1409, 1410–1418)); endocrinology records from 2019 (R. 31, 32 (citing R. 2519–2533)); mental health treatment records dated from 2017 to 2019, including medical source statements from Ms. Erazo's mental health counselors Lauren Dennelly, LSCW and Karen Brooks-Wells, MA LPC (R. 32–33, 34 (citing R. 1563-1592, 1410–1418, 1160–1163, 1427–1430, 1160–1163, 1553–1557)); and pain management records dated between 2016 and 2017 (R. 33 (citing R. 1164–1185)).

The ALJ determined that Ms. Erazo's "allegations of work preclusive functional loss are not consistent with the objective findings in the medical evidence record" and that the record evidence instead indicates that Ms. Erazo is capable "of sustaining sedentary work on a regular and sustained basis." R. 29. While the ALJ acknowledged that Ms. Erazo has some limitations, he ultimately determined that she "is capable of at least a range of sedentary work" with certain restrictions. R. 35.

The regulations define "sedentary work" as involving "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." *Titles II & Xvi: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2*, SSR 83-10 (S.S.A. 1983). A job is sendentary if walking and standing are required only occasionally. *Id.* For sedentary work, "periods of standing and walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." *Id.* at *5. The ALJ's determination that Ms. Erazo is capable of a range of this work is supported by substantial evidence.

When evaluating whether an individual is disabled, the ALJ is instructed to "assess and make a finding about an individual's residual functional capacity based on all the relevant medical and other evidence in the individual's case record" including evidence relating to impairments that the ALJ found were not severe at step two or did not meet or equal a listing at step three. *See Soc. Sec. Ruling 16-3p Titles II & Xvi: Evaluation of Symptoms in Disability Claims*, SSR 16-3P (S.S.A. Oct. 25, 2017). Ms. Erazo asserts that the ALJ's RFC determination is not supported by substantial evidence and alleges that the ALJ ignored record evidence indicating that Ms. Erazo's

back pain and foot numbness were increasing and becoming more frequent beginning in 2017. Pl. Br. at 24.

The ALJ did not ignore Ms. Erazo's back pain and foot numbness, as Ms. Erazo suggests. Rather, in reaching his conclusion, the ALJ noted that he "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessting the claimant's residual functional capacity." R. 25. This is not mere boilerplate. The ALJ thoroughly reviewed the record and acknowledged that Ms. Erazo has a history of back problems and associated pain, that she underwent back surgery in 2015, that she received treatment by a physiatry specialist and chiropractor in 2018 and 2019, and that, by 2020 she reported  thather back and neck pain was stable and she was tolerating her medication. R. 30 (citing R. 591–619, 739–747, 1819–1869, 2645–2661, 2627–2644, 2545–2626). Likewise, the ALJ noted that Ms. Erazo regularly presents with weakness in her lower left extremity (R. 31), and that she reported intermittent increased reports of pain after walking more than usual (R. 32), but that "this current residual functional capacity would accommodate the claimant's complaints and prevent exacerbation of her pain[.]" R. 32. I agree with the Commissioner that "the ALJ did not ignore Plaintiff's reports of pain, but instead assessed a very limiting residual functional capacity to accommodate it." I find no error here.

Ms. Erazo also claims that the RFC determination is not supported by substantial evidence because "[t]he opinions of Dr.'s Wertz and Monfared support an RFC for less than found by the ALJ, in that they agree that Ms. Erazo's ability to stand and walk is very limited, and that she needs a cane for ambulation and balance." Pl. Br. at 28.

The ALJ assessed the persuasiveness of several medical opinions included in the record. I will focus my analysis here on the opinions of Dr. Wertz and Dr. Monfared

only. As discussed elsewhere in this opinion, the ALJ rejected each of Dr. Wertz's medical source opinions after determining that "are not supported by findings from this provider nor the record as a whole." R. 34. The ALJ found the opinion of state consultive examiner Dr. Ziba Monfared to be "only partially persuasive." R. 34. In discounting Dr. Monfared's opinion, the ALJ noted that while Dr. Monfared's findings are "consistent with [her] examination and generally with the record as a whole" the persusive value of the opinion is limited because it "was based on a one-time interaction with the claimant without the benefit of any meaningful review." R. 34. As discussed above, the ALJ carefully explained his reasons for rejecting the various opinions of Dr. Wertz in his discussion of his RFC finding. R. 34–35. The ALJ similarly addressed Dr. Monfared's consultive examination and sufficiently explained his reasons for discounting its persuasiveness. Having weighed each challenged opinion against other relevant evidence and explained why he acctepted certain evidence and rejected other evidence, the ALJ is free to reject these physicians' conclusions. *See Cadillac*, 84 F. App'x at 168 (quoting *Kent*, 710 F.2d at 115 n.5) (internal quotation omitted). I do not find any error here.

Finally, Ms. Erazo argues that the Vocational Expert's testimony cannot be "substantial evidence" to support the ALJ's RFC determination because "the ALJ's hypothetical questions did not reflect the fact that Ms. Erazo suffers from constant and severe pain," and because "the ALJ refused to accept the VE testimony that there was no work for a hypothetical individual who, in additional to normal breaks, would require two additional 15-minute breaks in the first and second half of the workday." Pl. Br. at 29–30.

Ms. Erazo claims that the ALJ erred by failing to properly question the Vocational Expert about Ms. Erazo's pain symptoms, but she fails identify any objective evidence in the record that the ALJ ignored or otherwise improperly overlooked that supports her pain is severe enough to warrant a specific line of questioning at the administrative hearing.

Ms. Erazo also argues that the ALJ erred by asking the Vocational Expert questions about an acceptable number of breaks during the workday, but failed to incorporate this line of questioning into her RFC analysis. See Pl. Br. at 29–30. It is common, and prudent, for an ALJ to ask more than one hypothetical question of a vocational expert to flesh out the consequences of different RFC findings. An ALJ does not endorse a particular RFC by asking a question. That happens in the ALJ's decision. The issue on appeal is whether the ALJ's decision was based on substantial evidence, not whether another decision—based on the answer to an alternative hypothetical question asked of the vocational expert—would have been supportable. Because I find that the ALJ's decision not to incorporate further limitations into Ms. Erazo's RFC is supported by substantial evidence, I will leave his conclusion undisturbed.

At step four, the ALJ determined that Ms. Erazo is unable to perform any past relevant work. R. 35. In reaching this conclusion, the ALJ relied on testimony from the Vocational Expert who noted that the responsibilities of Ms. Erazo's prior roles as a Teacher Aide II and a Nursery School Attendant exceeded the demands of her residual functional capacity. R. 35.

At step five, the ALJ concluded that "there are jobs that exist in the national economy" that Ms. Erazo is capable of performing considering her age, education, experience, and RFC. R. 36. The ALJ devotes about a page of her opinion to reviewing

the available alternative work, and Ms. Erazo's capacity to perform it. R. 36–37. The ALJ acknowledged that "the claimant's ability to perform all or substantially all of the requirements of [the sedentary] level of work has been impeded by additional limitations." R. 36. To determine how those limitations eroded Ms. Erazo's available occupational base, the ALJ asked the ALJ whether jobs exist in the national economy for an individual with Ms. Erazo's age, education, experience, and RFC. R. 36. The Vocational Expert indicated that Ms. Erazo would be able to perform the requirements of the following representative occupations: Toy Stuffer (sedentary, unskilled, SVP2), Cuff Folder (sedentary, unskilled, SVP2), and Compact Assembler (sedentary, unskilled, SVP2). R. 36–37. The ALJ noted that the Vocational Expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles, but that in certain respects the DOT simply did not address certain limitations (e.g. hand/foot controls; push/pull; use of cane; operation of motor vehicle). R. 37. The ALJ accepted the Vocational Expert's testimony in totality, as it was based on her knowledge and experience. R. 37.

The ALJ ultimately determined that Ms. Erazo was not under a disability, as defined in the Social Security Act, during the relevant period. Because the ALJ's decision was reasonably supported by substantial evidence, I will uphold her decision and deny Ms. Erazo's claim for relief.

## CONCLUSION

Because I find no error in the ALJ's analysis, the decision of the ALJ is affirmed, and the appeal dismissed. I will enter an Order and Judgment accordingly.


BY THE COURT:


 s/ Richard A. Lloret
**RICHARD A. LLORET**
**U.S. Magistrate Judge**